UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MICHAEL J. GEDEON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:15-cv-30062-KAR |
| | ) | |
| CITY OF SPRINGFIELD | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO AMEND
COMPLAINT AND DEFENDANT'S MOTION TO DISMISS
(Dkt. Nos. 10, 23 & 26)

ROBERTSON, U.S.M.J.

On March 6, 2008, the defendant City of Springfield ("Springfield" or "Defendant") filed

a verified code enforcement petition in the Hampden Division of the Housing Court Department

of the Massachusetts Trial Court ("Housing Court") naming Andrea M. Gedeon as the

respondent and seeking to remediate conditions at 1502 Bay Street in Springfield.  Over the next

six to seven years, Defendant sought to have Ms. Gedeon and Plaintiff Michael Gedeon

(hereinafter, "Plaintiff") remedy what Defendant ultimately proved to the Housing Court's

satisfaction was an illegal junkyard and fire hazard on the property.  Springfield's efforts

spanned multiple hearings in the Housing Court and ended with a court-authorized sale of the

property by a receiver to recover its lien for expenses incurred in cleaning up the property.

Plaintiff, who is self-represented,[1] filed this suit against Springfield on or around April 2,

2015, bringing claims of trespass (Count I); conversion of property (Count II); and, reading the

---

[1] Pursuant to an order entered on April 22, 2015, Plaintiff is proceeding *in forma pauperis* in this
case (Dkt. No. 5).  In ruling on Defendant's motion to dismiss, the court has taken into

1

complaint generously, selective or retaliatory code enforcement in violation of his constitutional

rights under the Equal Protection clause of the Fourteenth Amendment, and violation of his

Fourth Amendment rights against unreasonable searches, pursuant to 42 U.S.C. § 1983 (Count

III) (Dkt. No. 1).  On October 14, 2015, Defendant moved to dismiss the complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6), on the ground that the complaint failed to state a claim

on which relief could be granted (Dkt. No. 10).  On December 21, 2015, Plaintiff moved for

leave to file an amended complaint which contained the same three claims as his initial

complaint (Dkt. No. 23-2).  Springfield opposed this motion but, in any event, renewed its

motion to dismiss as to the proposed amended complaint (Dkt. No. 26).  The court having

scheduled a hearing on Springfield's motion to dismiss at which Plaintiff failed to appear (Dkt.

No. 36), the pending motions are ripe for decision.  The parties have consented to this court's

jurisdiction (Dkt. No. 30).  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  The court hereby grants

Plaintiff's motion for leave to file an amended complaint.  For the reasons set forth below,

Springfield's motion to dismiss will be granted as to Count III, which contains the only claims in

the amended complaint identifiable as having a basis in federal law.  The court declines to

exercise supplemental jurisdiction over the remaining state law claims in Counts I and II of the

amended complaint, which will be dismissed without prejudice.

I.   RELEVANT FACTUAL BACKGROUND[2]

---

consideration its obligation to screen such cases pursuant to 28 U.S.C. § 1915A at the earliest
practicable point in time.

[2] The facts stated herein are drawn from plaintiff's amended complaint (Dkt. No. 23-2) and from
public documents submitted by Springfield in support of its motion to dismiss.  *See, e.g., Xiao
Wei Yang Catering Linkage in Inner Mongolia Co., LTD v. Inner Mongolia Xiao Wei Yang USA,
Inc.*, 150 F. Supp. 3d 71, 76 (D. Mass. 2015) (a court considering a motion to dismiss properly
may consider facts and documents that are part of or incorporated in the complaint and official
public records, including court records) (citing *Alt. Energy, Inc. v. St. Paul Fire and Marine Ins.
Co.*, 267 F.3d 30, 33 (1st Cir. 2015)); *Buba v. Deutsche Bank Nat'l Tr. Co. Ams.*, Civil Action

On or about March 6, 2008, Springfield filed a verified code enforcement action in the Housing Court naming as defendant Andrea M. Gedeon ("Ms. Gedeon"), record owner of 1502 Bay Street (Dkt. No. 11-4 at 1-3).  The petition, to which the Housing Court assigned docket number 08-CV-335, sought a temporary restraining order or a preliminary injunction directing Ms. Gedeon to address a number of serious state sanitary code violations on the property (*id.*).

After a February 13, 2009 hearing, at which a representative of Ms. Gedeon appeared, the court ordered Ms. Gedeon to provide Springfield access to the property for the purpose of re-inspection (*id.* at 5).  Following a March 13, 2009 hearing, Plaintiff was added as a defendant in the Housing Court action and he and Ms. Gedeon were ordered to register, remove, or garage all unregistered motor vehicles on the property and to remove all auto parts and tires and non-construction material, including bulk items, trash and/or debris, from the property by June 30, 2009 (*id.* at 6-7).

At a July 10, 2009 hearing, Plaintiff entered into an agreement with Springfield by which he agreed to comply with the March 13, 2009 order on or before July 27, 2009 (*id.* at 18).  On July 28, 2009, Defendant conducted an inspection of the property to verify that Plaintiff had removed items as mandated by the March 13, 2009 order.  Defendant found that violations remained at the property (*id.*).  Following a July 31, 2009 hearing, Plaintiff was granted an extension to August 31, 2009 to comply with the March 13, 2009 order (*id.*).  Defendant re-inspected the property on August 31, 2009 and observed several unregistered motor vehicles and debris throughout the property (*id.*).  Plaintiff denied Defendant access to the rear of the property (*id.*).  On or about September 4, 2009, Plaintiff entered into another court agreement to remove

---

No. 16-10421-PBS, 2016 WL 2626861, at *3 (D. Mass. May 6, 2016) (citing *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008)) (matters of public record that a court properly may consider on a motion to dismiss include documents from prior state court adjudications).

all cars from the front of the dwelling by October 1, 2009 and to allow Defendant access to the rear of the property (*id.*). Plaintiff further represented that no one was living on the property and that the dwelling would remain vacant. When Defendant inspected the premises pursuant to the September 4th court agreement, it found that all violations remained (*id.*).

On or about October 5, 2009, Defendant entered into another agreement with Plaintiff, approved by the Housing Court, in which Plaintiff agreed to have all wrecked, inoperable and/or unregistered motor vehicles removed from the property by October 30, 2009 (*id.* at 18-19). Defendant inspected the premises on November 4, 2009 and found that all violations remained (*id.* at 19). Defendant entered into two more agreements with Plaintiff, dated November 6 and November 23, 2009, by which Plaintiff agreed to have all wrecked, inoperable and/or unregistered motor vehicles removed from the property by dates certain (*id.*). Plaintiff failed to comply with these agreements, as verified by inspections that took place at the property on November 18 and December 9, 2009 (*id.*). After a December 11, 2009 hearing, at which Plaintiff was present, Plaintiff was ordered to allow Defendant access to the premises on January 20, 2010 for the purpose of inspecting and removing all unregistered vehicles (*id.* at 8). Plaintiff's January 13, 2010 motion for reconsideration was denied by the Housing Court (*id.* at 19). At a June 18, 2010 status hearing, at which Plaintiff represented that he planned to build a garage on the property and had made "significant progress" in registering multiple motor vehicles on the property (*id.*), Plaintiff agreed that Springfield could enter the property on June 25, 2010 for an inspection (*id.*). Defendant inspected the property on that date and found that all violations remained (*id.*).

Following an August 18, 2010 hearing, the Housing Court ordered Plaintiff to remove all unregistered and inoperable vehicles, as well as all auto parts, including tires, car doors, engines,

and axels, on or before September 1, 2010 (*id.* at 10).  The Court further ordered Plaintiff, after September 1, 2010 and upon 48 hours' notice, to give Springfield access to the property to remove the aforementioned items (*id.*).  Plaintiff filed a notice of appeal from the court order, which appeal was dismissed on Springfield's motion on November 21, 2011 (*id.* at 20).

On or around February 14, 2012, without prior notice to Plaintiff, an inspector employed by Defendant entered the premises at 1502 Bay Street and took photographs of conditions on the property (Dkt. No. 23-1 at 1, ¶ 1).  At a February 27, 2012 evidentiary hearing on Defendant's motion for an injunctive order, at which Plaintiff appeared, Plaintiff moved orally to strike photographs taken at 1502 Bay Street on February 14, 2012 "from within the property lines" (Dkt. No. 11-4 at 13, ¶ 2).  Plaintiff's motion to strike was allowed without opposition by Springfield, and the photographs to which Plaintiff objected were not considered as a basis for the Housing Court's order, in which it found that Defendant had sustained its burden of proof that the property at 1502 Bay Street constituted a junkyard in violation of Springfield ordinances and rejected Plaintiff's defense to the action (*id.* at 13, ¶¶ 2-3).  Accordingly, the Court ruled that Springfield had six months to enter the premises and remove the trash, debris, unregistered vehicles, automobile parts, building materials, and overgrowth (*id.* at 13).  Defendant was required to provide Plaintiff with three business days' notice of its entry onto the premises (*id.*).  Once proper notice had been issued, Defendant had thirty days to complete its cleaning activity.  The Housing Court authorized Springfield to establish a lien on the premises for the reasonable costs incurred in cleaning the property (*id.* at 14).

On or around March 15, 2012, pursuant to the Housing Court's February 27, 2012 order, Springfield served its notice of entrance on Plaintiff, who responded by filing a March 29, 2012 motion for an emergency hearing.  After the hearing, at which Plaintiff was present, his

emergency motion was denied (*id.* at 20).  On or around April 9, 2012, Springfield served Plaintiff with another notice of entrance, informing Plaintiff that Springfield would be on the property from April 23 to April 27, 2012, pursuant to the Housing Court's February 27, 2012 order, to clean the property (*id.*).  On Springfield's entry onto the property, it discovered six illegal 275-gallon oil tanks containing heating oil, along with a variety of combustible materials (*id.* at 21).  Based on this information, the Housing Court issued a search warrant for the premises at 1502 Bay Street (*id.*).  The Housing Court denied Plaintiff's ensuing emergency motion, and, on May 3, 2012, after another hearing, determined that the oil tanks were illegally installed and authorized Defendant to enter the premises with a licensed contractor to remove the tanks and oil (*id.* at 15-16, 21).

Following a June 27, 2012 hearing on Defendant's motion for the appointment of a receiver, the Housing Court found that Plaintiff had failed to manage and maintain the premises in compliance with the state sanitary code, and that violations would not be promptly remedied without the appointment of a receiver (*id.* at 21).  The court allowed Defendant's motion and, on July 9, 2012, appointed ROC Stone Development Corp. ("Receiver") as receiver of the property. (*id.* at 17-30).

Finally, after a February 14, 2013 hearing at which Plaintiff appeared with counsel, the Receiver's motion to approve a rehabilitation plan was allowed over Plaintiff's objection (*id* at 31).  Subsequently, the Receiver filed a motion to enforce its lien and authorize the sale of the property located at 1502 Bay Street, which motion was allowed on October 15, 2014 (*id.* at 32-36).  The sale of the property was approved on January 21, 2015 (*id.* at 37-38).

II.  DISCUSSION

A.  Standard of Review

To survive a motion to dismiss, a "complaint must contain enough factual material to raise a right to relief above the speculative level … and state a facially plausible legal claim," *Guerra-Delgado v. Popular, Inc.*, 774 F.3d 776, 780 (1st Cir. 2014) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011)), "accept[ing] as true well-pleaded facts in the complaint and draw[ing] all reasonable inferences in the pleader's favor.  *Id*. (citing *Tasker v. DHL Rev. Sav. Plan*, 621 F.3d 34, 38 (1st Cir. 2010)).  In resolving a motion to dismiss, the court employs a two-step approach.  *See Medina-Velázquez v. Hernández-Gregorat*, 767 F.3d 103, 108 (1st Cir. 2014) (citing *Ocasio-Hernández*, 640 F.3d at 12).

> First, [the court] "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."  *A.G. ex. rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (internal quotation marks omitted).  Second, [the court] "must determine whether the remaining factual content allows a reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (internal quotation marks omitted).

*Medina-Velázquez*, 767 F.3d at 108.  While "a complaint need not plead facts sufficient to make out a prima facie case or allege all facts necessary to succeed at trial," *id*. (citing *Carrero-Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 717-18 (1st Cir. 2014)), the elements of a prima facie case "form[] 'part of the background against which a plausibility determination should be made.'"  *Id*. (quoting *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 54 (1st Cir. 2013)).  "An analysis of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Id*. at 109 (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)).  That said, "the court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"  *Ocasio-Hernández*, 640 F.3d at 12 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 556 (2007)).   "[A] court [may not] attempt to forecast a plaintiff's likelihood of success on

the merits; 'a well-pleaded complaint may proceed even if … a recovery is very remote and

unlikely.'"   *Id*. at 12-13 (quoting *Twombly*, 550 U.S. at 556).   Notwithstanding the court's

obligation to credit properly pled allegations, "[t]o the extent [a plaintiff's] allegations of what

happened in [prior state court] proceedings are at odds with the records, the court is not required

to accept the [plaintiff's] version."   *Katz v. McVeigh*, 931 F. Supp. 2d 311, 320 (D.N.H. 2013)

(citing *Rederford v. U.S. Airways, Inc.*, 589 F.3d 30, 35 n.4 (1st Cir. 2009) (even when ruling on

motions to dismiss, courts need not accept facts which have been conclusively contradicted)).

    B.   COUNT III – SECTION 1983

    "To sustain an action under 42 U.S.C. § 1983, [Plaintiff] must show both "'(i) that the

conduct complained of has been committed under color of state law, and (ii) that this conduct

worked a denial of rights secured by the Constitution or laws of the United States.'"   *Smith v.*

*City of Boston*, No. Civ.A. 03-10062-DPW, 2004 WL 1572626, at *3 (D. Mass. July 13, 2004)

(quoting *Chongris v. Bd. of Appeals*, 811 F.2d 36, 40 (1st Cir. 1987)).   It is undisputed that the

first prong is met in this case: while 42 U.S.C. § 1983 applies to "persons," it is well-settled that

the statute applies to municipalities like Springfield when it is alleged that an act or acts

committed pursuant to a municipal policy or custom "caused a constitutional tort."   *Id.*

Accordingly, the questions before the court are whether Plaintiff has alleged facts to support

claims that Defendant deprived Plaintiff of constitutionally protected rights to equal protection

and freedom from unreasonable searches and seizures and did so pursuant to a municipal policy

or custom.   *See id.*   These questions are addressed below.

    1.   Selective or retaliatory code enforcement

Reading the amended complaint generously, *see, e.g, Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (documents filed *pro se* must be liberally construed, and a *pro se* complaint held to standards less stringent than those governing pleadings drafted by lawyers), Plaintiff alleges that Springfield enforced the state sanitary code selectively when it initiated code enforcement proceedings in connection with 1502 Bay Street in retaliation for a lawsuit he previously filed against Springfield (Dkt. No. 23-1 at 1, ¶¶ 6, 9). Liability on a claim for selective code enforcement based on improper motives depends on proof that: "'(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as . . . intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Rubinovitz v. Rogato*, 60 F.3d 906, 910 (1st Cir. 1995) (quoting *Yerardi's Moody St. Rest. & Lounge, Inc. v. Bd. of Selectmen*, 878 F.2d 16, 21 (1st Cir. 1989)); *see also MacFarlane v. Town of East Bridgewater*, 110 F. Supp. 3d 310, 323 (D. Mass. 2015) (citing *Cordi-Allen v. Conlon*, 494 F.3d 245, 250 (1st Cir. 2007)) (to state "class of one" selective code enforcement claim, a plaintiff must allege that he has been intentionally treated differently from similarly situated others, and that there was no rational basis for the different treatment).[3]

As to the first element, Plaintiff alleges that Springfield "filed 'sanitary code violations' against [him] which were not enforced elsewhere in the City or in the areas around Springfield" (Dkt. No. 23-1 at 2, ¶ 13. This is an insufficient "conclusory legal allegation" because it is unaccompanied by any factual allegations from which it could be inferred that Springfield was aware of and tolerated illegal junk yards and serious fire hazards on property belonging to any

---

[3] The court assumes without deciding that Defendant's decision to file a code enforcement petition is sufficient to establish a causal connection between a municipal policy or custom and an alleged constitutional violation. *See Wright v. Town of Southbridge*, Civil Action No. 07-40305-FDS, 2009 WL 415506, at *8 (D. Mass. Jan. 15, 2009).

Springfield resident other than Plaintiff.  *See Medina-Velázquez*, 767 F.3d at 108; *McFarlane*,

110 F. Supp. 3d at 323.

      As to the second element, in view of the record of prior state court proceedings,

Plaintiff's amended complaint does not state facts that could establish the lack of a rational basis

for the code enforcement proceedings Defendant initiated in connection with 1502 Bay Street.

Housing Court documents show that Springfield initiated the code enforcement proceeding in

March 2008 (Dkt. No. 11-4 at 5).[4]  Following the filing of the code enforcement petition, the

Housing Court convened multiple hearings, including evidentiary hearings, related to conditions

at 1502 Bay Street.  On February 27, 2012, the Housing Court, having excluded from evidence

two photographs to which Plaintiff objected, ruled that the "City ha[d] met its burden of proof

that the conditions of the premises constitute[d] a junkyard in violation of the City's ordinances"

---

[4] Defendant has submitted its 2008 verified code enforcement petition and numerous orders entered by the Housing Court related to the premises at 1502 Bay Street as exhibits in support of its motion to dismiss (Dkt. No. 11-4 at 1-38).  *See Buba*, 2016 WL 2626861, at *3.  In view of these records, each of which included docket number 08CV335, and which, in most cases, included in the caption a reference to 1502 Bay Street, Springfield, MA (Dkt. No. 11-4 at 1-38), the court is not required to accept Plaintiff's assertion that Defendant did not initiate code enforcement proceedings related to 1502 Bay Street until 2012 (Dkt. No. 23-1 at 1, ¶¶ 2, 5).  *See Katz*, 931 F. Supp. 2d at 320.

Plaintiff opposes Defendant's motion to dismiss primarily on the basis that "the information provided by Defendant does not apply to 1502 Bay St., Springfield, MA" (Dkt. No. 23-2 at 18-19).  Neither the complaint nor the amended complaint identified the property that was the basis of Plaintiff's claims against Defendant in this case.  In addition to filing a code enforcement action against Ms. Gedeon in March 2008 related to conditions at 1502 Bay Street, on April 27, 2012, Defendant sought an emergency administrative warrant for property at 155-157 Grove Street.  The Grove Street property apparently also belonged to Plaintiff, who has filed a separate action in this court, docketed as Civil Action No. 16-30054, related to the Grove Street property. Because Plaintiff failed to identify the property at issue in this case, Defendant's motion to dismiss addressed code enforcement actions related to *both* properties.  Plaintiff's opposition to Defendant's motion to dismiss is, quite simply, based on an erroneous contention.  To the extent Plaintiff argues that the settlement of a prior code enforcement action barred any future action by Springfield related to hazardous conditions at 1502 Bay Street, he has cited no legal authority for this implausible contention, and the settlement agreement, attached to the amended complaint, explicitly provides otherwise (Dkt. No. 23-2 at 13).

and rejected Plaintiff's defense that he and Ms. Gedeon were prevented from remedying conditions on the premises by emissions from a neighboring property (*id.* at 13).  When, following this ruling, Defendant entered the property pursuant to the Housing Court order, Defendant discovered six illegally installed tanks containing heating oil, and other conditions that were "dangerous and hazardous" (*id.* at 21).  After a further hearing, the Housing Court concluded that the property at 1502 Bay Street "would not promptly be brought into compliance with the Codes without the appointment of a receiver" and, accordingly, appointed one (*id.* at 21).  Even if Plaintiff had adequately alleged selective enforcement, which he has not, he has not adequately alleged, on this record, that Springfield's enforcement action lacked a rational basis. *See Smith*, 2004 WL 1572626, at *5.  For these reasons, so much of Count III of Plaintiff's amended complaint as alleges code selective enforcement in violation of his right to Equal Protection will be dismissed.

      2.  <u>Alleged Fourth Amendment violation</u>

Reading the amended complaint generously, Plaintiff further alleges that Defendant violated his Fourth Amendment right to be free from unreasonable searches when an employee of the Defendant entered his property on February 14, 2012 and obtained photographs which Defendant then used as a basis to initiate the sanitary code enforcement proceedings against Ms. Gedeon as owner of 1502 Bay Street (Dkt. No. 23-1 at 1, ¶ 1).

Even assuming that Plaintiff has adequately alleged a Fourth Amendment violation here, the only defendant he has named is the City of Springfield, which is a municipality (Dkt. No 23-2 at 1).  Liability against Springfield for a claim premised on the Fourth Amendment must be analyzed under the rule set forth in *Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978). *Monell* provides that a municipality can be liable when its agents and employees commit a

constitutional violation, but not under a theory of *respondeat superior.  Id.* at 691-95; *see also, e.g., Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 25 (1st Cir. 2005); *McElroy v. City of Lowell*, 741 F. Supp. 2d 349, 353 (D. Mass. 2010); *Wright*, 2009 WL 415506, at *7-8. "The Supreme Court, concerned that municipal liability based on fault by the City might collapse into de facto *respondeat superior*, has set a very high bar for assessing municipal liability under *Monell*.  The alleged municipal action at issue must constitute a 'policy or custom' attributable to the City." *Young*, 404 F.3d at 26 (citing *Silva v. Worden*, 130 F.3d 26, 31-32 (1st Cir. 1997)). Further, this allegedly illegal municipal policy or custom "must actually have caused the plaintiff's injury," and the municipality must have exhibited "'deliberate indifference'" to the alleged violation of a plaintiff's rights.  *Id.*

The amended complaint fails to state a claim for Defendant's liability for the alleged Fourth Amendment violation because Plaintiff has not adequately alleged a policy or custom of the City of trespassing on private property to obtain photographs to support of code enforcement proceedings, nor has he alleged deliberate indifference on Defendant's part to an alleged constitutional violation.  Plaintiff alleges that on February 14, 2012, an agent or inspector of Defendant illegally entered his property and took photographs (Dkt. No. 23-1 at 1, ¶ 1).  He has not alleged that this action was pursuant to an official policy articulated or adopted by a Springfield official with decision-making authority.  *See McElroy*, 741 F. Supp. 2d at 353-54. Nor has he alleged that Defendant had a widespread custom or practice of illegally entering private property to obtain evidence in support of sanitary code enforcement proceedings.  *See id; see also Wright*, 2009 WL 415506, at *8.  A single instance of misconduct, such as the illegal trespass alleged by Plaintiff, is not an allegation of a wide spread and settled illegal practice, such that Defendant could be said to have either actual or constructive knowledge of the practice,

yet done nothing to end it.  *See Bordano v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989).

"Therefore, the single incident preferred in the complaint, without more, is insufficient to survive

this motion to dismiss." *McElroy*, 741 F. Supp. 2d at 354.

Furthermore, "[e]ven if [P]laintiff provided facts sufficient to overcome dismissal with

regard to the existence of a policy, [P]laintiff still must demonstrate the requisite causal

connection between that policy and his injury." *Id.* at 355.  On this record, Plaintiff has failed to

point to facts that would allow for the inference that the City had knowledge of a violation of his

constitutional rights, disregarded that violation, and that this disregard caused the injury of which

he complains.  *See Young*, 404 F.3d at 26.  Housing Court records properly before the court show

that Defendant filed its petition to enforce the state sanitary code and the ordinances of

Springfield based on conditions at 1502 Bay Street on March 6, 2008, not in February 2012 (Dkt.

No. 11-4 at 1-3).  *See Buba*, 2016 WL 2626861, at *3; *Katz*, 931 F. Supp. 2d at 320.  Thus,

contrary to Plaintiff's contention, Defendant did not rely on photographs taken on February 14,

2012 to initiate the proceedings that led to Plaintiff's loss of personal and real property.  Second,

Housing Court records show that, when Plaintiff moved to exclude the February 14th

photographs from proceedings in the Housing Court, presumably on the grounds that the

photographs had been illegally obtained, Springfield did not oppose the motion.  The Housing

Court struck the allegedly offending photographs and did not "consider[ them] as a basis for the

court's order" (Dkt. No. 11-4 at 13, ¶ 2).  Thus, on the record properly before the court on

Defendant's motion to dismiss, Plaintiff has failed plausibly to allege: (1) a constitutional

violation that actually caused the injury of which he complains (the loss of his real and personal

property); and (2) that Defendant, which did not object to the exclusion of photographs allegedly

obtained in violation of Plaintiff's Fourth Amendment rights, was deliberately indifferent to those rights.  *See McElroy*, 741 F. Supp. 2d at 356.

For these reasons, so much of Count III of the amended complaint as alleges a violation of Plaintiff's Fourth Amendment rights will be dismissed.

C.  COUNTS I AND II – PLAINTIFF'S STATE LAW CLAIMS

Counts I and II of the amended complaint assert state law claims of trespass and conversion, respectively (Dkt. No. 23-1 at 2, ¶¶ 14-15).  "In a federal question case, a federal court may decide closely related state law claims pursuant to the limits of its supplemental jurisdiction."  *Hootstein v. Collins*, 928 F. Supp. 2d 326, 348 (D. Mass. 2013) (citing 28 U.S.C. § 1367).  The dismissal of the only federal claims in such a case does not divest the federal court of its supplemental jurisdiction over the related state law claims, but such a dismissal raises the question of whether the court should exercise supplemental jurisdiction.  *See Roche v. John H. Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 256-57 (1st Cir. 1996) (authorizing a district court to decline adjudication of lingering state law claims after it has dismissed "all claims over which it has original jurisdiction").  When a federal court decides whether to exercise supplemental jurisdiction after all federal claims have been dismissed, "[n]o categorical rule governs the analysis; a court must weigh concerns of comity, judicial economy, convenience, and fairness."  *Redondo Const. Corp. v.  Izquierdo*, 662 F.3d 42, 49 (1st Cir. 2011) (citing *Roche*, 81 F.3d at 257; *Carnegie-Mellon Univ. v. Cahill*, 484 U.S. 343, 350 (1988)).  In the usual case in which all federal claims are eliminated at a preliminary stage of a case, the balancing of factors points towards declining to exercise jurisdiction over the remaining state law claims.  *See, e.g., Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998) (balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where foundational federal

14

claims have been dismissed at an early state of litigation); *cf. Redondo Const. Corp.*, 662 F.3d at 49 (in the usual case in which all state law claims are eliminated prior to trial, the balance of factors generally points towards declining to exercise jurisdiction over remaining state law claims).

In this case, several considerations weigh strongly in favor of deferring to the state courts as to the remaining state law claims. Most importantly, this case is in the very early stages. In addition, Plaintiff's claims of trespass and conversion are, for the most part, based on actions taken by Defendant pursuant to orders issued by the Housing Court. If, as seems likely, Plaintiff seeks by his state law claims to challenge the validity, lawfulness, or finality of judgments or orders entered by the Housing Court, this court would lack subject matter jurisdiction over such claims because, under the *Rooker-Feldman* doctrine, a federal district court generally does not have subject matter jurisdiction to review a judgment or order of a state court. *See Geiger v. Foley Hoag LLP Retirement Plan*, 521 F.3d 60, 65 (1st Cir. 2008); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). This court will therefore exercise its discretion and decline jurisdiction over Plaintiff's trespass and conversion claims. Thus, Plaintiff's remaining state law claims will be dismissed without prejudice to their re-filing in state court.

III. CONCLUSION

For the reasons stated, Plaintiff's motion to amend his complaint is GRANTED and Defendant's motion to dismiss the amended complaint is GRANTED (Dkt. No. 26). Defendant's motion to dismiss Plaintiff's initial complaint is deemed moot and will be denied on this basis (Dkt. No. 10). Counts I and II of the complaint will be dismissed without prejudice

and Count III will be dismissed with prejudice.  A final judgment shall enter and the case shall

be closed on the court's docket.

It is So Ordered.                                              /s/ Katherine A. Robertson
                                                               KATHERINE A. ROBERTSON
DATED: September 9, 2016                                        United States Magistrate Judge